UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY RAY HINSON, ET AL | CIVIL ACTION |
| VERSUS | NO. 08-4382 |
| M/V CHIMERA, ITS ENGINES, TACKLE, FURNITURE, EQUIPMENT, APPAREL, ETC., *IN REM* | SECTION "N" (3) |

## ORDER AND REASONS

Presently before the Court is "Plaintiffs' Motion for Partial Summary Judgment on Liability" (Rec. Doc. 19). Considering the parties' submissions and the applicable law, **IT IS ORDERED** that the motion is **GRANTED** to the extent stated herein.

**I.      Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to

summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II. <u>Analysis</u>

The key facts relative to this motion are not in dispute.[1] Plaintiffs are persons and entities that provided services and/or materials between July 2006 and April 7, 2007 to a vessel – the M/V Chimera – that they believed to be owned by Grande Rouge Charters, LLC ("GRC").[2] With their motion, Plaintiffs ask the Court to find that they hold maritime liens against the Chimera for these good and services, in amounts to be determined at trial, pursuant to the "Maritime Commercial Instruments and Liens Act" ("MCILA"), 46 U.S.C. §31301, *et seq*. In short, Plaintiffs maintain that

---

[1] In the interest of expeditious resolution of this motion, the Court's recitation of these facts is limited to only those essential for adequate communication of the Court's reasoning.

[2] The Court understands that litigation regarding the M/V Chimera's ownership is pending in state court.

3

GRC contracted with them to provide goods and services "necessary" to the Chimera, that GRC had authority – or is statutorily presumed to have had authority – for this procurement, that they have not been compensated, and that the Chimera, as well as Defendants, have unjustly benefitted from this nonpayment.[3]

Relative to Plaintiff's claims, the MCILA establishes maritime liens for persons who have provided "necessaries" to a vessel on the order of the vessel owner or a person authorized by the owner. The MCILA also includes a statutory presumption of authority for such procurement to certain persons. Specifically, the statute provides, in pertinent part:

> **§ 31342. Establishing maritime liens**
>
> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner –
>
> > (1) has a maritime lien on the vessel;
> > (2) may bring a civil action in rem to enforce the lien; and
> > (3) is not required to allege or prove in the action that credit was given to the vessel.
>
> (b) This section does not apply to a public vessel.
>
> **§ 31341. Persons presumed to have authority to procure necessaries**
>
> (a) The following persons are presumed to have authority to procure necessaries for a vessel:
>
> > (1) the owner;
> > (2) the master;
> > (3) a person entrusted with the management of the vessel at the port of supply; or
> > (4) an officer or agent appointed by--
> > > (A) the owner;
> > > (B) a charterer;

---

[3] Unless otherwise indicated, "Defendants" herein refers to United Leasing Corporation ("ULC"), United Leasing Marine, LLC ("ULM"), and Sophlex Gulf Shipping, LLC ("Sophlex").

> (C) an owner pro hac vice; or
> (D) an agreed buyer in possession of the vessel.

(b) A person tortiously or unlawfully in possession or charge of a vessel has no authority to procure necessaries for the vessel.

In response to Plaintiffs' motion, Defendants argue (1) that GRC was not authorized to procure necessaries for the Chimera, and (2) that Plaintiffs Johnny Hinson and James Hinson are not entitled to a maritime lien, even if the other Plaintiffs are, because they both were "joint venturers" with GRC. Having carefully considered the parties' submissions and applicable authorities, the Court disagrees. More particularly, the Court finds that Defendants have failed to satisfy their summary judgment burdens relative to these contentions, and that Plaintiffs are entitled to a judgment as a matter of law with respect to the existence (but not the amount) of their maritime liens.

### A.  GRC's Authority

In first contesting GRC's authority to procure necessaries for the Chimera, Defendants acknowledge that GRC inquired as to the Chimera's record owner when it entered into an "Agreement to Purchase" with Caribbean Maritime Excursions, Inc. ("CME") in July 2006. Defendants urge, however, that GRC failed to exercise due diligence by not also investigating the existence of any liens or encumbrances existing on the Chimera. Specifically, Defendants point to a January 10, 2005 "First Preferred Mortgage" in favor of ULM (hereinafter, "ULM Mortgage") that was recorded with the United States Coast Guard Vessel Documentation Office on March 10, 2005, and thus would have been reflected on the Coast Guard's "Abstract of Title" in July 2006.[4]

---

[4] *See* Plaintiffs' Motion for Summary Judgment (Rec. Doc. 19-4), Exh 2, at p. 3; *see also* Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Rec. Doc. 19-2) at p. 7. The Court notes that the ULM Mortgage is not reflected on the Coast Guard "Certificate of Documentation," identifying the vessel's owner, that was issued to GRC in July 2006. *See* Plaintiffs'

Defendants maintain that, if GRC had reviewed the ULM Mortgage, it would have discovered that document's prohibition against the sale of the vessel absent ULM's written consent thereto, as well as other security documents concerning the Chimera.

The Court assumes arguendo that Defendants' assertions concerning the ULM Mortgage and its restrictions on the sale of the Chimera are correct. That being said, the parties seeking relief in this action are Plaintiffs – persons who supplied goods and services to and for the benefit of the Chimera – not GRC. With respect to those suppliers, § 31341 establishes statutory presumptions of authority for certain procurers. Significantly, a 1971 statutory amendment removed a "duty of reasonable inquiry" as to the procurer's authority that the statute previously imposed on the supplier of necessaries. *See Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743, 746-49 (5th Cir. 1985)(discussing amendment). Thus, the statutory presumptions of authority set forth in § 31341 apply *unless* rebutted by a showing that the supplier of necessaries had *actual* knowledge that the procurer in fact lacked authority. *See, e.g., Stevens Ship. and Term. Co. v. Japan Rainbow II MV*, 334 F.3d 439, 443 (5th Cir. 2003) (citing *Gulf Oil Trading Co.,* 757 F.2d at 749); *Belcher Co. v. M/V Maratha Mariner,* 724 F.2d 1161,1163 (5th Cir. 1984); *see also Belcher Oil Co. v. M/V Gardenia*, 766 F.2d 1508, 1512 (11th Cir.1985) (burden on owner to show supplier's actual knowledge of lack of authority asserted as a defense).

Here, notwithstanding the pending dispute as to the actual ownership of the Chimera in July 2006, the Court finds there to be no triable issue with respect to whether GRC comes within one of the categories of procurers set forth in § 31341. Rather, on the showing made, the Court finds that, at a minimum, GRC qualifies as either "a person entrusted with the management of the vessel

---

Motion for Summary Judgment (Rec. Doc. 19-4), Exh B to Exh.1. The owner of the vessel is identified there as Caribbean Maritime Excursions, Inc. ("CME"). *Id.*

at the port of supply," or an "agent appointed by . . . a charterer or an owner pro hac vice." *See* 46 U.S.C. § 31341. Specifically, there is no dispute that CME purported to sell the Chimera to GRC in July 2006, agreed to finance the transaction, and was aware of GRC's intended modifications and use of the vessel as a crewboat. Further, the parties' submission reveal that a CME representative actually visited GRC in Louisiana during the time that GRC had possession of and was working on the vessel. Nor have Defendants introduced evidence demonstrating that Plaintiffs had actual knowledge of GRC's alleged lack of authority. Accordingly, it is presumed, as a matter of law, that GRC acted with authority in procuring goods and services from Plaintiffs for the Chimera during the time that GRC had possession of that vessel.

### B. Joint Venture with GRC

As previously stated, Defendants' second argument in opposition to Plaintiffs' motion concerns only two Plaintiffs – Johnny Hinson ("Johnny") and James Hinson ("James"). Defendants maintain that these particular plaintiffs are not entitled to maritime liens because they both were "joint venturers" with GRC at the time their services were rendered to the Chimera. The Court likewise finds Defendants' showing relative to this defense insufficient to avoid summary judgment in favor of these two plaintiffs.

Under § 31342, as set forth above, an authorized supplier of necessaries to a vessel is not required to allege or prove that credit was given to the vessel. *See* 46 U.S.C. § 31342. Rather, there is a rebuttable statutory presumption that the supplier of necessaries relies on the credit of the ship in providing goods and/or services. *Id.*; *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1209-10 (5th Cir. 1978). Thus, the party disputing the existence of the lien bears the burden of proving that the opposite is true. *See, e.g., Sasportes,* 581 F.2d at 1208-10; *Crustacean Transp. Corp. v. Atalanta Trading Corp.*, 369 F.2d 656, 660 (5th Cir. 1967); *Point Landing, Inc. v. Alabama*

7

*Dry Dock & Shipbuilding,* 261 F.2d 861, 867 (5th Cir. 1958); *see also Fulcher's Point Pride Seafood, Inc. v. M/V "Theodora Maria,"* 752 F. Supp. 1068, 1071-74 (S.D. Ga. 1990), *aff'd*, 935 F.2d 208 (11th Cir. 1991).

Establishing that the supplier of necessaries is engaged in a joint venture as to the vessel is one way to overcome the presumption established in § 31342. Specifically, "[j]oint venturers cannot hold maritime liens because they are not 'strangers to the vessel.'" *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir. 1991) (internal citations and quotations omitted); *see also, e.g., Sasportes,* 581 F.2d at 1207-09. Rather, a joint venturer occupies "a position akin to an owner," and relies on the credit of the co-venturer rather than the credit of the vessel. *Sasportes,* 581 F.2d at 1207-09; *see also Rose v. M/V Gulf Stream Falcon*, 186 F.3d 1345, 1348 (11th Cir. 1999); *Fulcher's Point Pride Seafood, Inc.,* 935 F.2d at 211. This rule is justified because of the equities involved; that is, "those who share the responsibility for incurring the debts of the vessel ought not be reimbursed out of that vessel's proceeds to the detriment of other lienholders." *Colonial Bank v. Oil Screw Bettye B*, Civ. Action No. 86-3872, 1987 WL 15650, *1 (E.D. La.)(Feldman, J.).

In determining whether a joint venture exists, "the parties' intentions are important." *Sasportes,* 581 F.2d at 1208. Pertinent factors include: (1) the existence of joint control, or a joint right of control, relevant to the vessel's operations, (2) joint proprietary interests in the subject matter of the venture, and (3) a sharing of profits and losses. *Id.* at 1208-10; *Fulcher's Point Pride Seafood, Inc.,* 935 F.2d at 211-13. These factors, however, are not to be applied "mechanically." *Sasportes,* 581 F.2d at 1208. Further, the entirety of the relationship in question must be considered; no single aspect is determinative. *Id.* at 1208; *Fulcher's Point Pride Seafood, Inc.,* 935 F.2d at 211-12. As recognized in *Sasportes*, "[m]any business dealings other than joint ventures might involve.

8

. . joint property holdings." *Id*. And "large creditors may exert some control over a business even when they are unquestionably not joint venturers." *Id.* Similarly, under certain circumstances, one might be entitled to a share of profits without becoming a joint venturer or waiving lien rights. *Id.* at 1208-10.

Defendants' contentions that Johnny and James were joint venturers with GRC stem primarily from their familial relationships with the two member-owners of GRC: Constance (a/k/a Rene) Hinson ("Constance") and Jonathan Hinson ("Jonathan"). Constance is Jonathan's mother. Johnny is Constance's husband and Jonathan's father; James is Constance's father-in-law and Jonathan's grandfather.

With respect to Johnny, Defendants additionally emphasize that (1) Constance's investment in GRC and any resulting profits are community property; (2) James, Constance, Jonathan and GRC have the same address; (3) Johnny was somewhere in the bank when the purchase agreement between GRC and CME was signed by GRC; and (4) Johnny accompanied Constance and Jonathan to Tortola when they went to inspect the Chimera. Defendants contend that a joint venture occurs when a party, such as Johnny, "profits indirectly from the relationship."

With respect to James, Defendants additionally point to his pledge of a $100,000 Certificate of Deposition as collateral for a bank loan obtained by GRC, as well as James' statement that he expected to be paid for his services "when the boat went to work or was sold." Defendants urge that these actions evidence an expectation by James to "share in the profits" and, thus, render him a joint venturer with GRC.

The Court finds that Defendants' joint venture contentions relative to these Plaintiffs do not establish the existence of a triable issue of fact operating in Defendants' favor. Rather, it is undisputed that the only two member-owners of GRC are Constance and Jonathan. Further, GRC,

9

a limited liability company, not Constance and Jonathan, held the only (if any) ownership interest in the Chimera. *See* La. R.S. 12:1329 ("member shall have no interest in limited liability company property"). It is true that, under Louisiana community property law, Johnny, as Constance's spouse, will benefit from any profits that she receives as a result of her investment of community funds (apparently with Johnny's consent) in GRC. *See* La. Civ. Code arts 2334 and 2339. Nevertheless, the Court is not convinced that this indirect sharing of profits from an LLC interest, which occurs by operation of law, alone creates a joint venture between a non-member spouse and the company. Nor do the additional facts referenced by Defendants carry their burden.

Significantly, Jonathan's affidavit and Johnny's deposition testimony aver that Jonathan and Constance, not Johnny, held all control and decision-making authority over GRC's operations.[5] Johnny testified as to this with respect to the work to be done to the Chimera and whether, once the work was completed, GRC would sell or operate the vessel.[6] Johnny's mere presence at the bank at the time the purchase agreement was signed, and his accompanying of his wife and son to Tortola for the Chimera's inspection, are alone not sufficient to create a triable dispute on this issue.[7] The same is true with respect to Johnny's sharing an address with GRC, given

---

[5] *See generally* Affidavit of Jonathan D. Hinson, Exh. 1 to Plaintiffs' Motion for Summary Judgment (Rec. Doc. 19-4); *see also* Deposition of Johnny Ray Hinson, Exh. 1 to Plaintiff's Reply Brief in Support of Motion for Summary Judgment (Rec. Doc. 27-2) and Exh. H to Defendants' Supplemental Opposition to Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. 24-2) at pp. 27 and 86. *See also* La. Civ. Code art. 2352 ("spouse who is a member has the exclusive right to manage, alienate, encumber, or lease the limited liability interest").

[6] *See* Deposition of Johnny Ray Hinson, Exh. 1 to Plaintiff's Reply Brief in Support of Motion for Summary Judgment (Rec. Doc. 27-2) and Exh. H to Defendants' Supplemental Opposition to Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. 24-2) at pp. 27 and 86.

[7] With respect to the trip to Tortola, Johnny testified that Constance and Jonathan went to look at the vessel," but that he "was kind leery about letting them [Constance and Jonathan] go down there by themselves." And, although he indicated that he was present when Constance and Jonathan

the closely-held nature of the business, and that its activities regarding the Chimera apparently were the primary focus of its business operations.[8]

Further, although Johnny was hired to oversee the repair and conversion of the Chimera into a crewboat, and serve as the boat's captain while that work was underway, no evidence has been cited to show that he exercised more authority than any other person hired for these positions would. Nor has any evidence been offered that he was unqualified for the work for which he was hired, or that he did not actually provide some amount of useful, legitimate services to the vessel. Finally, Johnny testified that he expected to be paid "fair market value," *i.e.*, "the going rate," for his services, did not expect to share (directly) in the profits or losses from the vessel, and viewed a lien against the vessel to be a "fallback" for payment of his services.[9]

Defendants' contentions regarding James also are inadequate to create a triable issue of fact as to the nature of his involvement with GRC. James testified that GRC owned the Chimera, that Jonathan owned GRC, that he had no decision-making control relative to the Chimera, and that he had no agreement to share in the profits or losses with GRC.[10] Contrary to Defendants' assertions,

---

looked at the vessel, he also states that he "was just along for the ride" to Tortola. *See* Deposition of Johnny Ray Hinson, Exh. I to Defendants' Supplemental Opposition to Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. 24-2) at pp. 45-46.

[8] The Court has been offered very little evidence relative to the circumstances of GRC's formation or the overall scope of its business.

[9] *See* Deposition of Johnny Ray Hinson, Exh. 1 to Plaintiff's Reply Brief in Support of Motion for Summary Judgment (Rec. Doc. 27-2) and Exh. H to Defendants' Supplemental Opposition to Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. 24-2) at pp.40-41, 85-87.

[10] *See* Deposition of James Ray Hinson, Exh. 2 to Plaintiff's Reply Brief in Support of Motion for Summary Judgment (Rec. Doc. 27-2) and Exhs. J&K to Defendants' Supplemental Opposition to Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. 24-2) at pp.12-13, 17, 19-20, 24, 30 and 33.

a grandfather's desire to help his grandson by posting collateral for a bank loan does not alone create a joint venture with the grandson's company. Nor does James' willingness to delay compensation – at fair market value – for his services until such time as the Chimera generated revenue for GRC create a triable issue.

In conclusion, the Court recognizes that a close familial relationship exists between the owners of GRC and two of the persons hired to provide services to the Chimera. It is not inconceivable, moreover, that an extended family *could* engage in a joint venture regarding a vessel that would preclude all of the family members from holding a maritime lien. Here, however, Defendants have not put forth sufficient evidence to demonstrate that a triable issue exists on this point. In the absence of such evidence, there is no basis for Defendants and the Chimera to enjoy the increased value of the value that apparently resulted, at least in part, from Johnny's and James' efforts without paying just compensation for those goods and services.

### III.   Conclusion

On the showing made, the Court finds no genuine issues of material fact to exist in Defendants' favor with respect to GRC's entitlement to the benefit of the statutory presumption of authority granted by 46 U.S.C. § 31341, or Plaintiffs' actual knowledge regarding GRC's alleged lack of authority to procure goods and services for the M/V Chimera. The same is true with respect to Defendants' assertions regarding an alleged joint venture involving Plaintiffs Johnny Hinson and James Hinson. Accordingly, given the absence of genuine issues of material fact, and the Court's determination that Plaintiffs are entitled to judgment as a matter of law relative to the existence (in

an amount to be determined at trial) of their maritime liens on the M/V Chimera, **IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Rec. Doc. 19) is **GRANTED**.

New Orleans, Louisiana, this 24th day of September 2009.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE